UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

DIAMOND SERVICES
MANAGEMENT, LLC,

           **Plaintiff,**

    - against -

FABLE JEWELRY COMPANY, INC.
d/b/a FABLE DESIGNS,

          **Defendant.**

------------------------------------------------ X

**OPINION AND ORDER**

**12 Civ. 3543**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/20/12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Plaintiff Diamond Services Management, LLC ("Diamond") brings this action against Fable Jewelry Company, Inc. ("Fable").[1]  Diamond asserts two causes of action: (1) breach of contract (Count One); and (2) breach of the covenant of good faith and fair dealing (Count Two).  Pursuant to Federal Rule of Civil Procedure 56, Diamond now moves for summary judgment on Count One.

---

[1]    Jurisdiction is based on diversity of citizenship and an amount in controversy over $75,000.  *See* 28 U.S.C. § 1332.

For the following reasons, Diamond's motion is granted, and Count Two is dismissed *sua sponte*.

## II.   BACKGROUND[2]

### A.   The License Agreement

Diamond is a Delaware Limited Liability Corporation that has the exclusive right to sublicense certain patents relating to methods for manufacturing tungsten rings (the "Licensor Patents").[3]  Fable is a Utah corporation that is in the business of designing, manufacturing, marketing, and selling jewelry throughout the United States.[4]  On October 1, 2008, Diamond and Fable entered into a license agreement (the "License Agreement") through which Diamond granted Fable a "non-exclusive, non-transferable, non-assignable license under the Licensor

---

[2]      The factual summary that follows is based on the following: Diamond's Local Civil Rule 56.1 Statement of Material Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment ("Diamond 56.1"); Fable's Local Rule 56.1 Statement Controverting Facts Asserted by Plaintiff ("Fable 56.1"); Diamond's Complaint ("Compl."); Richard Goldman's Affidavit in Support of Plaintiff's Motion for Summary Judgment ("Goldman Aff."); the 10/19/12 Declaration of Eric Crow ("Crow Decl."); and the exhibits attached to the foregoing.

[3]      *See* Diamond 56.1 ¶¶ 1, 3.

[4]      *See id*. ¶ 2.

Patents to make, use, import, offer for sale and sell licensed products" in the United States.[5]

In consideration for receiving this license, the License Agreement obligates Fable to pay Diamond royalties (the "Royalty Payments") for each unit of product incorporating the Licensor Patents (the "Licensed Products") on a quarterly basis over annual periods running from October 1st to September 30th (the "Annual Period").[6]  The Royalty Payments are calculated by multiplying the number of units Fable sold during the Annual Period by a dollar amount specified in the License Agreement.[7]  Additionally, the License Agreement provides that the Royalty Payments for each quarter must not be below a certain amount (the "Minimum Royalties").[8]  During the first Annual Period – running from October 1, 2008 to September 30, 2009[9] – the Minimum Royalties were set at a flat fifty

---

[5]     *Id*. ¶¶ 4-5 (quoting License Agreement at 2 § 2.1).

[6]     *See id*. ¶¶ 7-8.

[7]     *See id*. ¶ 9.  The dollar amount by which the units sold are to be multiplied under the License Agreement varies with the time period.  For example, the amount is forty dollars per unit from October 1, 2008 through February 28, 2010. *See* License Agreement at 3 § 3.1.

[8]     *See* Diamond 56.1 ¶ 10 (citing License Agreement at 3 § 3.2).

[9]     *See* License Agreement at 4 § 3.3.

thousand dollars per quarter.[10]  For subsequent Annual Periods, the Minimum

Royalties per quarter are set to seventy percent of one quarter of the units sold

during the previous Annual Period, multiplied by the appropriate quarterly rate.[11]

The License Agreement further provides that, following the second quarter of the

second Annual Period, the Minimum Royalties per quarter must be "paid in

advance, on or before the first day of such quarter . . . ."[12]  Additionally, the

License Agreement obligates Fable to pay the difference between the Royalty

Payments and the Minimum Royalties (the "True-Up Royalties") within thirty

calendar days of the end of each quarter, and to provide to Diamond a detailed

written report of the calculations, subtotals, and amounts due and payable of the

Minimum and True-Up Royalties at the time they are made.[13]

### B.    Fable Stops Paying Royalties

Fable performed under the License Agreement for the first two

Annual Periods and the first two quarters of the next Annual Period,[14] but began to

---

[10]    *See* Diamond 56.1 ¶ 11 (citing License Agreement at 3 § 3.2).

[11]    *See id*.

[12]    *Id*. ¶ 12 (quoting License Agreement at 4 § 3.3).

[13]    *See id*. ¶¶ 13-15 (citing License Agreement at 3 §§ 3.1; 3.3; 3.4).

[14]    *See* Diamond 56.1 ¶ 17.

"fall behind on Royalty Payments at least as early as April 2011."[15]  Fable has

failed to fully pay the Minimum Royalties and the True-Up Royalties for the third

quarter of the Third Annual Period, and Fable has not paid any royalties for the

next five quarters.[16]  Fable has provided Diamond with Licensed Product sales data

for the third Annual Period, but not the fourth Annual Period.[17]  Consequently,

Diamond is capable of calculating the True Up Royalties and the Minimum

Royalties Fable owes it for the third Annual Period, but can calculate only the

Minimum Royalties for the fourth Annual Period.  By Diamond's calculation,

based on the formula set forth in the License Agreement and the sales data

provided by Fable, Fable owes $255,109.96 in unpaid royalties, exclusive of the

True-Up Royalties for the fourth Annual Period that Diamond is unable to

calculate without Fable's fourth Annual Period sales figures.[18]

On or around January 19, 2012, Diamond sent a letter to Fable

notifying Fable of the breach of its obligations under the contract and demanding

---

[15]     Compl. ¶ 21.  *See* Diamond 56.1 ¶ 18.

[16]     *See* Diamond 56.1 ¶¶ 18-19; 25; 31.

[17]     *See id*. ¶¶ 33 (citing Fable's 1st-4th Quarter Third Annual Reports, Ex. D to Goldman Aff., at 1-12); 46.

[18]     *See id*. ¶ 44.

that Fable make its outstanding royalty payments.[19]  The License Agreement

provides Fable with ten days from the date of receipt of a letter notifying it of a

breach of its payment obligations to cure such breach,[20] but Fable failed to cure the

alleged breach within ten days of receipt of Diamond's letter.[21]  Subsequently, on

May 4, 2012, Diamond instituted this action to recover the unpaid royalties from

Fable.

### C. Fable's Contentions

Fable's 56.1 Statement does not dispute the facts set forth in

Diamond's 56.1 Statement.  Instead, Fable's 56.1 Statement repeatedly asserts that,

because the royalty rates in the License Agreement were not "negotiated or

performed in good faith or in a manner dealing fairly with Fable," they should be

reduced or offset.[22]

Fable's 56.1 Statement sets forth the following "additional material

facts."  Prior to October 2008, Fable learned that Diamond was licensing "certain

---

[19]     *See id*. ¶ 48.

[20]     *See* License Agreement at 6 § 5.2.

[21]     *See* Diamond 56.1 ¶ 50.

[22]     Fable 56.1 at *passim* (citing Crow Decl. ¶¶ 5-20).

tungsten ring technology patented by Trent West."[23]  Fable then began negotiations with Diamond regarding these patents.[24]  In the course of these negotiations, Fable requested a "most favored nation type clause," but Diamond declined, assuring Fable that it would be treated fairly.[25]  Fable also requested a provision that would require Diamond to stop third party infringement on the Licensor Patents, but Diamond declined this request as well, assuring Fable that "rampant infringement would not be permitted."[26]

The terms of the License Agreement require Fable to pay Diamond between forty and fifty-five dollars for each tungsten ring Fable sells.[27]  This rate requires Fable to sell its rings for at least one hundred and ten dollars to turn a profit.[28]  However, after entering the License Agreement, Fable attended trade shows where vendors were selling tungsten rings at substantially lower prices, and determined that some were doing so without a royalty obligation to Diamond.[29]

---

[23]     *Id*. ¶ 52 (citing Crow Decl. ¶ 5).

[24]     *See id*. ¶ 53 (citing Crow Decl. ¶ 6).

[25]     *Id*. ¶ 56 (citing Crow Decl. ¶ 9).

[26]     *Id*. ¶ 58 (citing Crow Decl. ¶ 11).

[27]     *See id*. ¶ 61.

[28]     *See id*. (citing Crow Decl. ¶ 13).

[29]     *See id*. ¶ 62.

Fable later learned that other vendors were selling products incorporating the Licensor Patents under license from Diamond, but paying substantially lower rates than Fable.[30]  Because this "unchecked competition" harmed Fable's ability to turn a profit from the Licensed Products, Fable requested that Diamond enforce the Licensor Patents, but Diamond did not.[31]  Fable also asked Diamond to lower the per unit rates charged by the License Agreement, but Diamond refused.[32]  Fable's 56.1 Statement further states that Diamond does not have the right to enforce the Licensor Patents.[33]

### D.   Additional Relevant Terms of the License Agreement

In addition to the terms set forth above, the License Agreement also contains four miscellaneous provisions that bear on this opinion.  *First*, it contains an integration clause.[34]  *Second*, it contains a no reliance clause.[35]  *Third*, the

---

[30]     *See id.* ¶ 66 (citing Crow Decl. ¶ 19).

[31]     *Id.* ¶ 62.  *See id.* ¶¶ 62-64.

[32]     *See id.* ¶ 68 (citing Crow Decl. ¶ 21).

[33]     *See id.* ¶ 65 (citing Crow Decl. ¶ 18).

[34]     *See* License Agreement at 5 § 14.4 (stating that the License Agreement is the "final and entire agreement between the Parties," and that it supersedes anything prior).

[35]     *See id.* § 14.5 (stating that each party was advised by counsel as to the "meaning and consequence of all of the terms and provisions of this Agreement"

License Agreement provides that the payment obligations of Fable shall cease "[i]n the event that all of the Licensor Patents are held to be invalid and/or unenforceable" by the final, unappealable judgment of the United States Patent Office, the International Trade Commission, a court of appeals with no further right of appeal, or a court of competent jurisdiction.[36] And *fourth*, the License Agreement states that "[Diamond] shall have the sole and exclusive right to enforce or not enforce the Licensor Patents at its sole discretion."[37]

## III.   STANDARD OF REVIEW

### A.   Summary Judgment Standard

"Summary judgment is designed to pierce the pleadings to flush out those cases that are predestined to result in a directed verdict."[38] Thus, summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[39] "For

---

and that they did not rely on anything not set forth in the Agreement).

[36]   *Id*. § 3.3.

[37]   *Id*. § 10.

[38]   *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).

[39]   Fed. R. Civ. P. 56(c).

summary judgment  purposes, a 'genuine issue' exists where the evidence is such

that a reasonable jury could decide in the non-moving party's favor."[40]  "'A fact is

material when it might affect the outcome of the suit under governing law.'"[41]

[T]he burden of demonstrating that no material fact exists lies with the moving

party . . . ."[42]  "When the burden of proof at trial would fall on the nonmoving

party, it ordinarily is sufficient for the movant to point to a lack of evidence to go

to the trier of fact on an essential element of the non[-]movant's claim."[43]

  In a summary judgment setting, "[t]he burden is on the moving party

to demonstrate that no genuine issue respecting any material fact exists."[44]  "When

the burden of proof at trial would fall on the nonmoving party, it ordinarily is

sufficient for the movant to point to a lack of evidence . . . on an essential element

---

[40] *Sanchez v. Connecticut Natural Gas Co.*, 421 Fed. App'x 33, 34 (2d Cir. 2011) (quoting *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000)).

[41] *Carter v. Incorporated Vill. of Ocean Beach*, 415 Fed. App'x 290, 292 (2d Cir. 2011) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[42] *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted).

[43] *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[44] *Mavrommatis v. Carey Limousine Westchester, Inc.*, No. 10 Civ. 3404, 2011 WL 3903429, at *1 (2d Cir. Sept. 7, 2011) (citing *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994)).

of the nonmovant's claim."[45]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[46]  The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[47] and cannot "'rely on conclusory allegations or unsubstantiated speculation.'"[48]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"[49]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[50]

---

[45]     *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

[46]     *Id.*

[47]     *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[48]     *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

[49]     *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

[50]     *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

"'The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"[51]

## IV.   APPLICABLE LAW

### A.   Breach of Contract Under New York Law[52]

"Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach."[53] "The interpretation of the contract is a matter of law for the court . . . ."[54] "[T]he [c]ourt must look first to the parties' written agreement to determine the parties' intent and limit its inquiry to the words of the agreement itself if the agreement sets forth the parties' intent clearly and unambiguously."[55]

### B.   Covenant of Good Faith and Fair Dealing Under New York Law

---

[51]   *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

[52]   The License Agreement provides that New York law is controlling.  *See* License Agreement at 10 § 14.1.

[53]   *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, 438 Fed. App'x 20, 21-22, (2d Cir. 2011).

[54]   *1550 Fifth Ave. Bay Shore, LLC v. 1550 Fifth Ave., LLC*, 748 N.Y.S.2d 601, 603 (2d Dep't 2002).

[55]   *Russo v. Estee Lauder Corp.*, 856 F. Supp. 2d 437, 460 (E.D.N.Y. 2012) (citations and quotation marks omitted).

Under New York law, every contract creates an implied covenant of good faith and fair dealing, which "encompasses any promise that a reasonable promisee would understand to be included."[56] "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[57] The covenant acts to prevent one party from exercising discretionary authority granted them under the contract in a manner that frustrates the purposes of the contract.[58]

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."[59] Although it is

---

[56]    *Legend Autorama, Ltd. v. Audi of Am., Inc.*, 2012 N.Y. Slip Op. 07640, 2012 WL 5503626, at *1 (2d Dep't Nov. 14, 2012).

[57]    *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (citations and quotation marks omitted).

[58]    *See Sveaas v. Christie's Inc.*, 452 Fed. App'x 63, 66 (2d Cir. 2011) ("Under New York law, where a contract contemplates the exercise of discretion, the covenant of good faith and fair dealing includes a promise not to act arbitrarily or irrationally in exercising that discretion.") (quotation marks omitted).

[59]    *Matsumura v. Benihana Nat. Corp.*, 465 Fed. App'x 23, 29 (2d Cir. 2012) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). *Accord Dorset Indus., Inc. v. Unified Grocers, Inc.*, No. 11 Civ. 6337, 2012 WL 4470423, at *7 (E.D.N.Y. Sept. 27, 2012) ("Generally, a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim.") (citing *Harris*, 310 F.3d at 80).

impermissible to bring an implied covenant claim based on the same factual allegations as a breach of contract claim, it is permissible to bring a breach of contract claim and a separate implied covenant claim if the implied covenant claim is supported by distinct factual allegations.[60]  Furthermore, "[w]hile the covenant of good faith and fair dealing is implicit in every contract, it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights."[61]  The Second Circuit has stated that:

> In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties. Thus, whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact.[62]

## V.   DISCUSSION

---

[60]   *See Dorset Indus., Inc.*, 2012 WL 4470423, at *7 (stating that "a plaintiff may bring two breach of contact claims, one based on breach of the express terms and the other based on breach of the implied duty, as long as they are supported by factually distinct allegations.") (citations and quotation marks omitted).

[61]   *Fesseha v. TD Waterhouse Investor Servs., Inc.*, N.Y.S.2d 22, 23 (1st Dep't 2003).  *Accord HSH Nordbank AG New York Branch v. Street*, 421 Fed. App'x 70, 74  (2d Cir. 2011).

[62]   *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 99 (2d Cir. 2007) (citations and quotation marks omitted).

Diamond's motion for summary judgment is premised on Fable's admission that it failed to make the Royalty Payments it owed under the License Agreement.  Fable does not dispute that it failed to make Royalty Payments under the License Agreement, but it argues that there is a material dispute as to whether such payments should be reduced due to the alleged bad faith of Diamond.

### A.    Fable's Contentions Do Not Present a Genuine Issue of Material Fact

Fable's opposition to Diamond's motion for summary judgment rests on the erroneous notion that the covenant of good faith and fair dealing imposes a duty on Diamond to go above and beyond the express terms of the License Agreement.  The License Agreement states that it is "non-exclusive,"[63] vests sole enforcement discretion in Diamond,[64] and contains integration and no reliance clauses,[65] but Fable insists that "[Diamond]'s failure to act so that Fable enjoyed some patent exclusivity" presents a material issue of fact.[66]  Similarly, Fable sought a most favored nation clause, did not receive it, and signed the License Agreement anyway, but it now opposes summary judgment on the grounds that Diamond has

---

[63]    License Agreement at 2 § 2.1.

[64]    *See id*. at 8 § 10.

[65]    *See id*. at 9-10 §§ 14.4-14.5.

[66]    Defendant Fable Jewelry's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Opp. Mem.") at 11.

provided competitors with better licensing terms.[67]  Under New York law, the

covenant of good faith and fair dealing provides a means for a promisee to

vindicate its rights when the promisor has violated "the spirit, if not the letter of [a]

contract."[68]  It does not create a free-floating right to relief untethered from a

contract's express terms.[69]  To the extent that Fable's opposition to summary

judgment is grounded on the contract that it wished it had signed, rather than the

contract it actually signed, such opposition fails.

Fable's assertion that Diamond never had the right to enforce the

Licensor Patents also fails to raise a genuine issue of material fact.[70]  The assertion

is unsupported, appearing in one paragraph of the declaration of Fable's CEO, Eric

Crow, bereft of background.  And it is not developed in Fable's opposition brief.

Such unsupported assertions cannot defeat a motion for summary judgment.[71]

---

[67]    *See id.*

[68]    *In re Refco Inc. Secs. Litig.*, 826 F. Supp. 2d 478, 497 (S.D.N.Y. 2011).

[69]    *See HSH Nordbank AG New York Branch*, 421 Fed. Appx. at 74.

[70]    *See* Fable 56.1 ¶ 65 ("Fable learned for the first time after entering into the License Agreement that DSM has no right, power or authority to enforce the patents of the License Agreement.") (citing Crow Decl. ¶ 18).

[71]    *See Ortiz v. Village of Monticello, N.Y.*, No. 06 Civ. 2208, 2012 WL 5395255, at *5 (S.D.N.Y. Nov. 2, 2012) ("in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions") (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).

Fable's opposition to Diamond's motion for summary judgment fails on the independent basis that, under New York law, "there is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable . . . ."[72]   Fable opposes summary judgment on the grounds that it is entitled to set off some portion of the Royalty Payments because they were too high, or, alternatively, because Diamond did not enforce the Licensor Patents.[73]   Even if Fable's implied covenant  claims were valid and entitled it to damages, they are presently unliquidated and disputed.   Accordingly, these claims cannot as a matter

---

*See also Tutko v. James River Paper Co., Inc.*, No. 98-9663, 1999 WL 1024627, at *2 (2d Cir. Oct. 29, 1999) (affirming grant of summary judgment against party who "variously relie[d] on inadmissible statistics, conclusory affidavits and mere conjecture and surmise" to defeat summary judgment).

[72]   *Willett v. Lincolnshire Mgmt, Inc.*, 756 N.Y.S.2d 9, 10 (1st Dep't 2003) (quotation marks and citations omitted).

[73]   *See* Opp. Mem. at 11 ("a reasonable trier of fact could conclude that any dollar amount claimed by DSM should be reduced or entirely offset by excessive amounts DSM has already received or by damaged to Fable caused by DSM's failure to act so that Fable enjoyed some patent exclusivity. . . .  Therefore, DSM's motion for summary judgment should be denied.").

of law set off Diamond's liquidated contract claim.[74]  In sum, Diamond's motion

for summary judgment is granted.

### B.   Diamond's Covenant of Good Faith and Fair Dealing Claim Is Dismissed *Sua Sponte*

Count Two alleges a breach of the implied covenant of good faith and

fair dealing, and it is based on the same set of facts as Diamond's breach of

contract claim.[75]  For this reason, I dismiss it *sua sponte*.[76]

### C.   Damages

---

[74]   *See Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, No. 11 Civ. 1456, 2011 WL 6034481, at *5 (S.D.N.Y. Dec. 5, 2011) (collecting cases, and holding that proposed implied covenant counterclaim could not set off liquidated claim for breach of contract arising out of franchisee's failure to make franchise payments).  Diamond's claim is liquidated because it is ascertainable from the License Agreement without the exercise of discretion.  *See* Henry Campbell Black *et al.*, *Black's Law Dictionary* 930 (6th ed. 1990) (defining a "liquidated claim" as a "claim . . . which can be determined with exactness from parties' agreement or by arithmetical process . . . without reliance on opinion or discretion").  *Cf. In re Mazzeo*, 131 F.3d 295, 304 (2d Cir. 1997) (stating that "if the value of the claim is easily ascertainable, it is generally viewed as liquidated" and distinguishing the terms "disputed" and "liquidated" in the context of the federal bankruptcy code, 11 U.S.C. § 109(e) (1994)) (quotation marks and citations omitted).

[75]   *See* Compl. ¶¶ 36-37.

[76]   *See 4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 241 (S.D.N.Y. 2011) (*sua sponte* dismissing plaintiffs' implied covenant claims on the basis that "New York does not recognize a separate claim for breach of an implied covenant of good faith where a contract exists").

The only remaining issue is the calculation of damages, in particular the amount of the True-Up Royalties that accrued during the fourth Annual Period, running from October 1, 2011 to September 30, 2012.  The only information necessary to calculate this amount is the Licensed Product sales data from the fourth Annual Period.[77]  Fable is therefore ordered to submit this information to Diamond within ten (10) days of the date of this Opinion and Order.  The parties are then to meet and confer within seven (7) days of this submission, and jointly submit a calculation of Fable's True-Up Royalties for the fourth Annual Period to the Court within two (2) days of this conference.  I reserve decision on damages until this submission has been made to the Court.

## V.    CONCLUSION

For the foregoing reasons, Diamond's motion for summary judgment is granted.  It is hereby Ordered that: (1) Fable is to submit its Licensed Product sales data for the fourth Annual Period to Diamond within ten (10) days of the date of this Order; (2) the parties are to meet and confer within seven (7) days of the date of this submission; and (3) the parties are to jointly submit to the Court a calculation of Fable's True Up royalties for the fourth Annual Period within two

---

[77]    *See* Diamond 56.1 ¶ 47.

(2) days of this conference.  The Clerk of Court is directed to close this motion

(Docket No. 10).

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            November 20, 2012

**-Appearances-**

**Counsel for Plaintiff:**

Christian Samay, Esq.
Todd Richheimer, Esq.
SNR Denton US LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

**Counsel for Defendant:**

Todd E. Zenger, Esq.
Kirton McConkie
60 East South Temple #1800
Salt Lake City, Utah 84111
(801) 328-3600

Igor Krol, Esq.
Krol & O'Connor
320 West 81st Street
New York, New York 10024
(212) 545-8163